UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RANDY O'BRIEN, </br></br>　　　　Plaintiff, </br></br>　v. </br></br> INDIANA DEPARTMENT OF CORRECTION, by and through its Commissioner, Evelyn Ridley-Turner, and CRAIG A. HANKS, in his individual capacity, </br></br>　　　　Defendants. | CASE NO. 1: 03-cv-0018-DFH-WTL |

ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

　　　　Plaintiff Randy O'Brien, a former correctional officer, has been in Indiana state prisons since 1996 after being convicted for rape, sexual battery, and burglary. In 2001, O'Brien was attacked by two fellow inmates. He lost his left eye. O'Brien has sued under 42 U.S.C. § 1983 for alleged violations of his Eighth Amendment rights. He has named as defendants the Indiana Department of Correction by and through its Commissioner, as well as Craig A. Hanks, Superintendent of the Wabash Valley Correctional Facility, in his individual capacity. O'Brien alleges that the defendants were deliberately indifferent to his safety. He seeks both damages and injunctive relief. The defendants have moved for summary judgment. As explained below, the undisputed facts show that

neither Hanks nor anyone else was deliberately indifferent to O'Brien's safety.  The defendants' motion is therefore granted.[1]

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is only appropriate where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Only *genuine* disputes over *material* facts can prevent a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.*

On a motion for summary judgment, the moving parties must first come forward and identify those portions of the pleadings, depositions, answers to

---

[1] Because O'Brien's Eighth Amendment claim fails on the merits, the court does not address whether his claim for injunctive relief is sufficient to avoid the sovereign immunity defense raised by the Indiana Department of Correction and its Commissioner.  For the same reason, the court does not sort out the issues of personal responsibility posed by the record here.

interrogatories, and admissions on file, together with affidavits, if any, that the parties believe demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Where the moving parties have met the threshold burden of supporting the motion, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Local Rule 56.1 requires the party opposing a motion for summary judgment to identify specific and material factual disputes by citing specific evidence.

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn from it, in the light most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Liberty Lobby*, 477 U.S. at 255; *Celotex*, 477 U.S. at 323; *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999). However, a non-moving party must present more than mere speculation or conjecture to defeat a summary judgment motion. The issue is whether a reasonable jury might rule in favor of the non-moving party based on the evidence in the record. *Liberty Lobby*, 477 U.S. at 252; *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001); *Sybron Transition Corp. v. Security Ins. Co. of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997). The court may not weigh conflicting evidence or choose from among conflicting reasonable inferences from that evidence. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Nevertheless, if the non-moving party "fails to establish the existence of an element essential to his case, one on

which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), citing *Richards v. Combined Ins. Co. of America*, 55 F.3d 247, 251 (7th Cir. 1995).

*Facts for Summary Judgment*

The following facts are either undisputed or reflect the evidence in the light most favorable to plaintiff O'Brien as the party opposing summary judgment. O'Brien was formerly employed as a prison guard at the Indiana Youth Center. O'Brien Aff. ¶ 3; Def. Ex. B. He was incarcerated with the Indiana Department of Correction in May 1996 after being convicted for rape, sexual battery, and burglary. O'Brien Aff. ¶ 4; Def. Ex. C; Def. Ex. E. O'Brien was placed at the Wabash Valley Correctional Facility on June 10, 1996, where he was classified as a "High Risk Offender" because of his status as a former correctional officer and the nature of his "High Profile" case. Def. Exs. B-C. Within hours, other inmates recognized him as a former prison guard. O'Brien Aff. ¶ 5. He testified that he was threatened and thus feared for his physical safety. *Id.* ¶ 6. O'Brien then requested protective custody. *Id.* ¶ 7. He also refused to return to the general population. Def. Ex. C. O'Brien had been in G-Cellhouse for only one day when this occurred. *Id.*

O'Brien was placed in D-Segregation pending the outcome of his request for protective custody. Hanks Decl. ¶ 9. Mark Sevier, a casework manager,

conducted an investigation.  He did not substantiate any specific threats against O'Brien.  *Id.* ¶¶ 11-12.  On June 28, 1996, Sevier sent a memorandum addressed to Hanks stating that he did not doubt that O'Brien had indeed been recognized as an ex-officer in the general housing unit because of the numerous ex-IYC offenders there.  Def. Ex. C.  Sevier recommended that O'Brien's request for protective custody be denied but that he be placed instead in the left wing of the "D" housing unit ("D-HU") due to his status as a former corrections employee.  Hanks Decl. ¶ 13; Def. Ex. C.  O'Brien was moved to the left wing of D-HU on July 2, 1996.  O'Brien Aff. ¶ 8; Hanks Decl. ¶ 15; Def. Ex. H.

Hanks testified that offenders with a similar status to that of O'Brien, such as former police officers, prosecutors, and correctional officers, were usually assigned to the left wing of D-HU.  Hanks Decl. ¶ 16.  O'Brien disputes this point and testified that he knew of only three or perhaps four other "at risk" inmates in D-HU at the time, while the remaining inmates were mostly general population inmates.  O'Brien Aff. ¶¶ 17-19.  O'Brien also testified that prior to the incident at issue, there had been other disciplinary problems and fights in D-HU.  *Id.* ¶ 22.

After being moved to D-HU in July 1996, O'Brien did not make any further requests for protection nor any complaints concerning his safety.  O'Brien Aff. ¶ 23; Hanks Decl. ¶ 17.  O'Brien testified that he made no more requests because he did not want to be marked as an "at risk" inmate, and that he "was aware of the fact that to do so would not yield affirmative results, would antagonize the

administration, and might have placed me at further risk." O'Brien Aff. ¶¶ 23-24. He testified that this "knowledge" regarding requests for protective custody was "common knowledge" for the inmates and the correctional staff. *Id.* ¶ 25.[2]

More than four years after that placement, on January 14, 2001, O'Brien was attacked by two fellow inmates, Jodie Bennett and Andrew McBride. O'Brien Aff. ¶ 27; Hanks Decl. ¶ 18.[3] As a result of the attack, O'Brien lost his left eye. O'Brien Aff. ¶ 27. At first, O'Brien told the police that he had accidentally hit his head on the corner of the upper bunk in his cell. Def. Ex. F at 3. Later, O'Brien recanted and told police that McBride had attacked him, resulting in his eye injury. Def. Ex. G. at 2-5. He stated that he had not come forward with the truth the first time because he was afraid; "you know, you don't snitch in prison." *Id.* at 8-9.

O'Brien and his roommate Patrick Bradford testified that it was "common knowledge" that McBride and Bennett each had a history of violence and prior disciplinary problems. O'Brien Aff. ¶ 26; Bradford Aff. ¶ 18. O'Brien also

---

[2] Testifying that something is "common knowledge" does not suffice to establish "specific facts showing that there is a genuine issue for trial," which is what the party opposing summary judgement must set forth. Fed. R. Civ. P. 56(e).

[3] The court assumes that both Bennett and McBride attacked O'Brien. Both O'Brien and Hanks testified that this is indeed what happened. See Hanks Decl. ¶ 18; O'Brien Aff. ¶ 27. However, in his second statement to the police, O'Brien stated that only McBride had attacked him, and that he did not know of any other offenders who may have been around at the time. See Def. Ex. G at 5-7. He was explicitly asked whether he remembered if Bennett was in his cell, and he answered that he did not. *Id.* at 6.

-6-

submitted affidavits supporting that McBride indeed had such a history. Pl. Exs. D-H. Bradford further testified that on the same day that McBride and Bennett attacked O'Brien, he had witnessed them intimidate another inmate and invade his cell, and that the guards had observed this as well but had failed to discipline or transfer Bennett or McBride. Bradford Aff. ¶ 20. Finally, Bradford stated that he and other inmates witnessed Bennett regularly intimidate his cellmate, who was "crippled." *Id.* ¶ 22.

Hanks testified that he was not personally involved in or aware of the placement of Bennett or McBride in the same housing unit as O'Brien. Hanks Decl. ¶ 21. He also testified that he was generally not involved in specific decisions regarding offender housing. *Id.* ¶ 22. Other facts are noted below as needed, keeping in mind the standard for summary judgment.

*Discussion*

The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishment on convicted persons. *Wilson v. Seiter,* 501 U.S. 294, 296-97 (1991). Under the Eighth Amendment, prison officials must "provide humane conditions of confinement[,] . . . must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,* 511 U.S. 825, 832 (1994), quoting *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984). "In

particular . . . 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Farmer*, 511 U.S. at 832, quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988).

"No one disputes that prison can be a violent place. Nonetheless, prison officials have a duty to take reasonable steps to protect prisoners from this violence; prisoners are not required to live in a violent state of nature where brutal attacks are ignored." *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002) (reversing summary judgment for prison official who broke up one fight and then returned weapon to one inmate, who used it a second time).

In cases of inmate-on-inmate violence, proving mere negligence is not enough to establish a constitutional violation by government officials. *Farmer*, 511 U.S. at 835; *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). An official's conduct must rise to the level of criminal recklessness. *Farmer*, 511 U.S. at 836; *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992). Failure to protect an inmate from harm "violates the Eighth Amendment's prohibition of cruel and unusual punishment only if 'deliberate indifference by prison officials [to the prisoner's welfare] effectively condones the attack by allowing it to happen.'" *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997), quoting *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The proper test for deliberate indifference is whether the official (1) "knows that inmates face a substantial risk of serious

harm," and (2) "disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

In this case, Hanks concedes that he knew O'Brien would face a substantial risk of serious harm in prison because of his classification as a "high risk" offender. That point satisfies the first part of the test for deliberate indifference. Hanks argues that O'Brien's claim fails the second part because he did not disregard the risk to O'Brien and took reasonable measures to abate it. The undisputed facts show that Hanks is correct.

O'Brien was placed in G-Segregation immediately after making his request for protective custody, which he did only one day after arriving at Wabash Valley Correctional Facility. Def. Ex. C; Hanks Decl. ¶ 9. Sevier investigated the matter. In a memorandum addressed to Hanks dated June 28, 1996, he recommended that the request be denied but that O'Brien be moved to the left wing of D-HU instead. Def. Ex. C; Hanks Decl. ¶¶ 11-13. The transfer took place on July 2, 1996. Def. Ex. H; Hanks Decl. ¶ 15. The investigation and subsequent transfer appear to have been a reasonable response to the risk here, even if they were ultimately not successful. See *Borello v. Allison*, 446 F.3d 742, 748-49 (7th Cir. 2006) (reversing denial of qualified immunity; prison officials responded to complaints by having cellmate evaluated by psychiatrist, and plaintiff failed to show prison officials did not reasonably rely on psychiatrist's advice); cf. *Haley*, 86 F.3d at 642-43 (affirming verdict finding deliberate indifference where prison

officials ignored numerous complaints by the inmate about ongoing feud with his cellmate).

Here the undisputed facts show not only that prison officials took prompt action taken to abate the risk to O'Brien, but also that their action was reasonable under the circumstances and successful for more than four years. In *Lewis v. Richards*, the Seventh Circuit affirmed the district court's grant of summary judgment in favor of the prison officials in a similar § 1983 case. 107 F.3d at 551. To support his allegation of deliberate indifference on the part of the officials, Lewis testified that after he complained of an assault by members of a prison gang, the defendants denied his request for protective custody and instead transferred him to a different part of the prison. *Id.* at 553. The Seventh Circuit held that the decision was not deliberately indifferent to his safety:

> the fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety. . . . Had the defendants in this case simply refused to do anything, Lewis' case might survive summary judgment. But the record speaks otherwise. They transferred Lewis to a different area in the prison, rather than placing him in protective custody.

*Id.* After the transfer in *Lewis*, five months passed without further incident. *Id.* at 553-54.

In O'Brien's case, prison officials took similar action, assigning him to D-HU. After the transfer, O'Brien suffered no harm for more than four years. There is no evidence of attacks or incidents against O'Brien during this entire time

period. While at D-HU, O'Brien also did not make any further requests for protective custody nor any complaints regarding his safety. And while he argues that this was because he "was aware of the fact that to do so would not yield affirmative results, would antagonize the administration, and might have placed [him] at further risk," O'Brien Aff. ¶ 24, O'Brien has not brought forward any specific evidence to this effect. To the contrary, the record shows that the administration responded quickly to his first request for protective custody by segregating him immediately, investigating the situation, and transferring him to another unit within a few weeks. Def. Ex. C; Def. Ex. H. The undisputed fact that O'Brien was safe at D-HU for more than four years lends strong support to the conclusion that the response to the general risk O'Brien faced was reasonable as a matter of law.

O'Brien argues that D-HU was not a more protective unit than the general population housing unit and that, contrary to Hanks' assertion, it was not where "at risk" inmates were usually placed. Even if the court were to assume at the summary judgment stage that this is true, it does not change the outcome. The Eighth Amendment did not require prison officials to place O'Brien in a particular form of custody or to guarantee his safety. It required them to take reasonable steps to abate the risk of harm to him. "[P]rison officials who actually knew of a substantial risk to inmate health or safety are free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent." *Peate*,

294 F.3d at 882, citing *Farmer*, 511 U.S. at 847, and *Soto v. Johansen*, 137 F.3d 980, 981 (7th Cir. 1998).

This standard "ensures that the mere failure of the prison official to choose the best course of action does not constitute a constitutional violation." *Peate*, 294 F.3d at 882, citing *Farmer*, 511 U.S. at 844; see *Borello*, 446 F.3d at 748 (reversing denial of qualified immunity; prison officials were not deliberately indifferent when they sent the plaintiff's cellmate back to his cell; officials acted reasonably by taking cellmate for psychiatric evaluation and interviewing both inmates); *Fisher v. Lovejoy*, 414 F.3d 659, 664 (7th Cir. 2005) (affirming summary judgment; prison official not deliberately indifferent when he responded to inmates' group attack on the plaintiff by calling in additional guards and ordering all inmates against the wall, even though the plaintiff was then stabbed again a moment later by another inmate; as a matter of law, official's response to chaotic situation was reasonable, though not successful). Here, the undisputed evidence shows that the 1996 decision to assign O'Brien to D-HU succeeded in avoiding trouble for more than four years. A reasonable jury could not find that the assignment was an unreasonable response to the general risks O'Brien faced as an inmate who was a former prison guard.

O'Brien points to Hanks' testimony that he did not get involved in specific decisions regarding offender housing and argues that Hanks turned a blind eye to the dangers. See Hanks Decl. ¶ 22. O'Brien further argues that Hanks did not

set standards for housing decisions, and he cites *Woodward v. Correctional Med. Servs. of Ill., Inc.* for the proposition that jail managers who have "no policy" may be guilty of deliberate indifference. 368 F.3d 917, 929 (7th Cir. 2004). Neither point is sufficient to avoid summary judgment.

The court in *Woodward* was referring to precautions that must be taken against the possibility of inmate suicide in particular, such as having a suicide-watch option. There the absence of any policy can reflect deliberate indifference. In this case, the undisputed facts show that the prison had a policy, as shown by the immediate action taken upon receipt of O'Brien's request for protective custody. O'Brien was placed in D-Segregation pending the outcome of his request. Def. Ex. C. An investigation was then conducted, and a transfer of O'Brien to D-HU followed. *Id.* Thus, even though O'Brien's request for protective custody was not granted, a reasonable jury could not find a deliberately indifferent response on this record.

O'Brien also attempts to generate a credibility issue by contrasting Hanks' testimony that he did not get involved in specific decisions regarding offender housing with Sevier's memorandum addressed to Hanks. The degree of Hanks' involvement is not a material issue in this case. The undisputed facts show that reasonable steps were taken to abate the risk of harm to O'Brien. Disputes about Hanks' individual role therefore are not material.

Finally, O'Brien argues that McBride and Bennett were violent individuals with a known propensity to intimidate and attack other inmates, and thus, were not appropriate candidates for housing with O'Brien. O'Brien frames this issue as "whether placing predators in the same cell house as 'at risk' offenders is a reasonable response to the risk." This argument is misguided. O'Brien has not presented any evidence that would link the attack on him to his status as an "at risk" inmate. In fact, O'Brien and Bradford testified that McBride and Bennett intimidated all inmates, including Bennett's disabled cellmate, regardless of their status.

Hanks conceded knowing that O'Brien would face a substantial risk of harm while incarcerated at the Wabash Valley Correctional Facility because of his classification as a "high risk" offender. Based on this concession, the focus on summary judgment is the second part of the deliberate indifference test – whether reasonable steps were taken to abate that risk of harm. As concluded above, the steps taken were indeed reasonable. However, O'Brien's argument with regards to McBride and Bennett being violent inmates actually implies that O'Brien faced another, more specific risk from McBride and Bennett. Since Hanks did not concede that he knew that O'Brien would face this risk of harm, O'Brien must provide evidence sufficient to establish both parts of the deliberate indifference test with regards to it. In other words, O'Brien must provide evidence that would show that Hanks actually knew of the risk created by McBride and Bennett and that he disregarded that risk.

"A prisoner normally proves actual knowledge of impending harm by showing that he alerted prison officials to an identifiable threat to his safety." *James*, 956 F.2d at 700. In this case, O'Brien never complained about McBride or Bennett or indicated in any way that he felt threatened by them before the attack. See *Green v. DeBruyn*, 3:94-cv-904RP, 1996 WL 476691 at *6 (N.D. Ind. Aug. 15, 1996) (granting summary judgment because the plaintiff prisoner's complaint of generalized threats from unidentified inmates was not sufficient to establish prison official's knowledge of an excessive risk to his safety).

The Seventh Circuit recognizes that "alternatively, a plaintiff can show . . . the existence of so substantial a risk of harm that 'the defendants' knowledge of the risk can be inferred.'" *James*, 956 F.2d at 700, quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986). However, this standard is high, and O'Brien has not met it. While it is true that McBride had a violent past (McBride was in prison for murder and robbery), the same could be said about many of the other inmates at Wabash Valley Correctional Facility, including O'Brien himself, who was in prison for rape, sexual battery, and burglary. The fact that McBride and Bennett were violent inmates does not prove that Hanks actually knew they posed a risk of serious harm for O'Brien. Furthermore, there must be "a causal relationship between the challenged policy [here, placing McBride and Bennett in the same housing unit as O'Brien] and the particular constitutional deprivation alleged, here physical safety." *James*, 956 F.2d at 701. O'Brien has not brought forward any evidence to this effect. See *id.* (affirming directed verdict in favor of county

and prison officials; expert testimony that a policy of housing parole violators with probation violators was apt to cause increased inmate violence was insufficient to demonstrate risk substantial enough to warrant finding of inferred knowledge).

*Conclusion*

The defendants' motion for summary judgment is granted.  Final judgment shall be entered accordingly.

So ordered.

Date:  June 28, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Donald G. Banta
INDIANA STATE ATTORNEY GENERAL
Donald.Banta@atg.in.gov

Caroline B. Briggs
Briggs Law Office
briggs.law@gte.net

John Kenneth Morris
MORRIS LAW FIRM
patent.lawyer@verizon.net

Todd A. Weaver
INDIANA STATE ATTORNEY GENERAL
Todd.Weaver@atg.in.gov